## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Daniel Ferrari and Charlene Ferrari, <br><br> *Petitioners*, <br><br> v. <br><br> William Francis, <br><br> *Respondent*. | Case No. 1:25-cv-3127 <br><br> <u>Underlying Litigation</u>: <br> *Ferrari v. Francis*, Case No. 3:23-cv-00455-S, in the United States District Court for the Northern District of Texas |

## DANIEL FERRARI AND CHARLENE FERRARI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 45(d)(3)(A) and 26(c)(1), Movants Daniel Ferrari and Charlene Ferrari file this Memorandum of Law in Support of their Motion to Quash Subpoenas and for Protective Order. Movants request an order quashing the subpoenas issued by William Francis, Defendant in the Underlying Litigation, and precluding William Francis from taking their oral depositions as noticed in the Subpoenas attached to this Memorandum as Exhibits A and B. In support of their Motion, Movants state as follows.

### FACTUAL BACKGROUND

Daniel Ferrari and Charlene Ferrari are the elderly parents of Adam Ferrari, who filed a defamation Complaint in the United States District Court for the Northern District of Texas against Defendant William Francis. (Ex. C, Am. Compl., *Ferrari v. Francis*, No. 3:23-cv-00455-S, (Apr. 13, 2023) Dkt. 7.) Adam Ferrari's complaint alleges a single count for defamation based on statements Defendant Francis made in four communications to Adam Ferrari's business partners and investors. (*See id.* ¶¶ 34-42). The Complaint also details the ways that Defendant Francis unfairly competes with, and expresses personal animus against, Adam Ferrari and an associated business, Phoenix Energy One LLC ("Phoenix"). Phoenix has historically outcompeted Francis's

company (Incline Energy) in acquiring mineral leasehold interests, and Defendant Francis has

waged a yearslong campaign against Mr. Ferrari. (*Id.* ¶ 8.) Now, that campaign extends to Mr.

Ferrari's parents.

Movants Daniel and Charlene Ferrari founded Phoenix in 2019. (*Id.* ¶ 37; Ex. D,

Declaration of Charlene Ferrari (Mar. 24, 2025) ¶ 3.)[1] Movant Daniel Ferrari is quadriplegic as a

result of suffering from transverse myelitis. (Ex. D ¶¶ 8-9.)[2] Movant Charlene Ferrari is his

primary—and, often, only—caretaker. (*Id.* ¶ 10.) Mr. Ferrari requires extensive physical care.

(*Id.* ¶ 11.) His morning care routine takes approximately three hours. (*Id.* ¶ 12.) Consequently,

neither he nor his wife can schedule or attend early morning appointments. (*Id.*) His nighttime

care is also extensive, so Mr. and Mrs. Ferrari both must be home early in the evening to begin

that routine. (*Id.* ¶ 13.) Both Mr. and Mrs. Ferrari's days revolve around Mr. Ferrari's care,

doctor's appointments, and therapy appointments. (*Id.* ¶ 14.)

Due to Mr. Ferrari's paralysis, he also suffers from autotomic dysflexia, which is a

potentially life-threatening medical condition that causes an overreaction of the autonomic nervous

system. (*Id.* ¶ 18.) Mr. Ferrari often experiences severe headaches and drops in blood pressure.

(*Id.* ¶ 19.) He also suffers from serious other issues related to his physical condition. He has been

hospitalized numerous times for infections; he once became septic as a result of such infections

and received care in the ICU. (*Id.* ¶ 20.) Mr. Ferrari's condition also puts him at a high risk for

---

[1] Due to her infirmity, Ms. Ferrari signed and photographed the signature page of the Declaration after reviewing and confirming its contents; that signature is provided in the last page of her Declaration.

[2] In 2019, the United State Court of Federal Claims awarded Mr. Ferrari compensation through the National Vaccine Injury Program based on Mr. Ferrari's petition that he suffered transverse myelitis as a result of an influenza vaccination administered on September 30, 2016. (*Ferrari v. Sec. of Health and Human Servs.*, No. 1:19-vv-00093-UNV, In the United States Court of Federal Claims (Dkt. No. 141, Jan. 30, 2024).

complications and infections. (*Id.* ¶ 17.) All of these ailments are exacerbated by stress. (*Id.*) In fact, stressful triggers can cause stroke, heart attack, and seizures in people who suffer from autotomic dysflexia. (*Id.* ¶ 18.)

Defendant Francis knows about Mr. Ferrari's paralysis and that Mr. and Mrs. Ferrari are, in his words, "aged." Despite this, Defendant Francis has subpoenaed both Mr. Ferrari and Mrs. Ferrari to appear for back-to-back oral depositions at a time and place that is convenient for his counsel: March 26, because they were already planning to be in Chicago for a separate deposition that day. (Ex. E, Declaration of Ross Good (Mar. 24, 2025) ¶ 3, Ex. E-1.)

Additionally, Mr. Francis's aims for deposing the Ferraris appear to be purely to burden and/or harass the Ferraris. His stated position is that the Ferraris have knowledge of alleged involvement by Adam Ferrari into the early workings of Phoenix. (*Id.*) But, as Mr. Ferrari's counsel pointed out, many others, including Phoenix's executives, have superior knowledge of that issue. (*Id.*) Yet, Defendant Francis has never requested documents from Mr. or Mrs. Ferrari, nor has he asked to depose Phoenix's executives. (Ex. D ¶ 4, Ex. F, Declaration of Lindsey Wilson (Mar. 24, 2025) ¶¶ 5, 6.) Francis's decision to bypass not only less invasive written discovery from Mr. and Mrs. Ferrari, but also the depositions of corporate representatives and executives with equal or greater functional knowledge of Phoenix's day-to-day operations, speaks strongly to his intent. Neither Mr. Ferrari nor Mrs. Ferrari should be forced to sit for an oral deposition, at all—but certainly not until Francis at least exhausts other resources and individuals that are more likely to provide relevant information without facing significant—and completely undue—burden.

## ARGUMENT

### I.     Legal Standards – Motion to Quash and for Protective Order

"The importance of protecting parties and non-parties from undue burden is found in various provisions of the Federal Rules of Civil Procedure." *Taylor v. Kilmer*, 2020 WL 606781,

at *2 (N.D. Ill. 2020). Rule 45(d)(1) requires that attorneys responsible for serving a subpoena must avoid imposing undue burden or expense on a person subject to the subpoena. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015). To implement this requirement, the Federal Rules mandate that a court "***must*** quash or modify" a subpoena that "subjects a person to undue burden" (emphasis added). Federal Rule of Civil Procedure 45(d)(3)(A)(iv); *see also Elliot v. Mission Trust Services, LLC,* No. 14-CV-9625, 2015 WL 1567901, 3 (N.D. Ill. 2015) ("The desideratum of Fed. R. Civ. P. 45[(d)] is the protection of non-parties from undue burdens."). Rule 26(c) likewise authorizes the Court to "make any order which justice requires to protect a party or person from ... undue burden[.]" Fed. R. Civ. P. 26(c)(1)(A).

When determining whether a person will be subjected to undue burden, courts consider a number of factors, "including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the discovery, and the breadth of the request." *Uppal*, 124 F. Supp. 3d at 813. "Concern for the unwanted burden thrust upon non-parties is a factor entitled to ***special weight*** in evaluating the balance of competing needs." *Id.* (emphasis in original); *accord Lee v. City of Elkhart*, No. 2:12–CV–25–TLS–APR, 2013 WL 1754977, at *3 (N.D. Ind. Apr. 22, 2013) ("In the context of third party discovery, courts should be especially careful in protecting the parties from excessive or oppressive discovery.").

## II. Mr. Ferrari's Paralysis and Medical Conditions, and Mrs. Ferrari's Fulltime Caretaker Responsibilities, Present "Circumstance[s] That … Preclude[] The Taking of Their Deposition Altogether."

Courts pay special heed to protect those whose health is threatened by subpoenas. "[I]f an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order." *In re McCorhill Pub., Inc.*, 91 B.R. 223 (S.D.N.Y. 1988). Thus, "[o]ne of those rare circumstances that may preclude the taking of a deposition altogether is the medical incapacity of a witness to attend and sit through a deposition." *Dunford v. Rolly Marine Co.*, 233

F.R.D. 635, 637 (S.D. Fla. 2005). Requiring Mr. Ferrari to sit for a deposition would be dangerous to his health. This risk would be compounded by requiring him also to sit through his wife's deposition, back-to-back with his, as she is his full-time caregiver. This Court, like others, should recognize the undue burden Defendant Francis intends to impose on Mr. and Mrs. Ferrari and preclude their depositions.

Notably, non-party witnesses face a lower burden under Rule 26(c) when moving to prohibit their depositions on medical grounds. *See Campos v. Webb Cnty. Tex.*, 288 F.R.D. 134, 137 (S.D. Tex. 2012) (comparing evidentiary burden of non-party witnesses with that of parties seeking to delay or prevent a deposition based on threats to their health). This follows from the observation that "[n]on-parties have a different set of expectations." *Uppal*, 124 F. Supp. 3d at 813. Thus, a non-party witness who was "undergoing continued intensive care for a medical condition" was completely protected from ever having to sit for a deposition. *See Dunford v. Rolly Marine Serv. Co.,* 233 F.R.D. 635, 636–37 (S.D. Fla. 2005). Facing a similar situation, a federal district court recognized that sitting for a deposition would have been "very stressful" to a non-party who suffered from granulomatous enterocolitis, which resulted in "several bleeding episodes" and a "life-threatening hemorrhage" when it issued an order preventing that non-party's deposition. *Frideres v. Schiltz,* 150 F.R.D. 153, 155–57 (S.D. Iowa 1993). Similarly, the Fourth Circuit affirmed a district court's issuance of a protective order that prevented the deposition of a "mentally retarded" and "emotionally fragile" non-party witness who was likely to become "traumatized" by "the negative effects of the deposition." *Fonner v. Fairfax County, Virginia,* 415 F.3d 325, 331 (4th Cir. 2005). And the court precluded the pre-trial oral depositions of an eighty-year-old witness who suffered from several degenerative diseases including an Alzheimer's-type

disease and congenital heart, renal, and arthritis conditions which confined him to a wheelchair. *In re McCorhill Pub., Inc.,* 91 B.R. 223, 224–25 (Bankr. S.D.N.Y. 1988).

Movants' situation is highly analogous and warrants the issuance of a protective order. Mr. Ferrari is a quadriplegic who requires 24-hour care. (Ex. D ¶¶ 9-16.) That care is primarily provided by his wife, whom Defendant Francis would require be subjected to a deposition immediately before or after Mr. Ferrari was deposed. (*Id.* ¶ 10.) This would jeopardize Mr. Ferrari's health for obvious reasons. Appearing for a deposition would require Mr. Ferrari to face dangerous levels of stress that could trigger his autotomic dysflexia—potentially causing heart attack, seizure or stroke. (*Id.* ¶ 18.) The structure and time commitment of sitting in two back-to-back depositions would also affect Mr. Ferrari's spastic bladder, more than likely subjecting him to contracting a urinary tract infection—which have caused Mr. Ferrari to be treated in the ICU in the past. (Ex. *Id.* ¶ 20.) Given Mrs. Ferrari's role as Mr. Ferrari's primary caretaker, it would be impossible for her to appear for a deposition without Mr. Ferrari's presence. (*Id.* ¶ 22.) Thus, requiring her deposition would present substantially similar risks.

The court in *McCorhill* made the right call: "In the event that [a non-party witness] suffers a heart attack or other life-threatening seizure as a result of an oral deposition, no amount of subsequent apologies or statements of sorrow will compensate for the known risk." 91 B.R. at 225. This Court should recognize the same and preclude the pre-trial depositions of Mr. Ferrari and Mrs. Ferrari.

### III. Francis Failed to Explore Alternative Means Before Subjecting Mr. and Mrs. Ferrari to an Unduly Burdensome Deposition.

Rule 26(b)(2) of the Federal Rules of Civil Procedure further empowers district courts to limit the scope of discovery if "is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir.

2002). And courts frequently recognize that a party should explore alternative means before subjecting a deponent to a burdensome deposition. *Halperin v. Kissinger*, 606 F.2d 1192, (D.C. Cir. 1979), *aff'd per curiam*, 452 U.S. 713 (1981). Defendant Francis did not even attempt to exhaust less burdensome methods of obtaining discovery before issuing subpoenas to Mr. and Mrs. Ferrari. For this additional reason, the subpoenas should be quashed.

First, despite issuing over a dozen third-party subpoenas in this case, Francis never requested documents from Mr. or Mrs. Ferrari prior to subpoenaing their depositions, including when discussing the specific and unnecessary burden on the Movants and how superior testimony could be obtained elsewhere. (Ex. E ¶ XX, Ex. E-1.) Francis's "failure to take advantage of this inexpensive, convenient method of discovery … casts serious doubts over [his] claim that [the Ferraris] possess information that [is] more than marginally relevant to [his] civil action." *Patterson*, 281 F.3d at 682.

Defendant's counsel has represented that it aims to depose Mr. and Mrs. Ferrari regarding Phoenix's "purported control, capitalization," and their "involvement and control as a means to conceal Adam's involvement and control" in Phoenix. (Ex. E ¶ 3, Ex. E-1.) But Mr. and Mrs. Ferrari are not the only individuals who have personal knowledge of these issues. In fact, Mr. and Mrs. Ferrari are not even the individuals with the best personal knowledge of these issues. Lindsey Wilson, Phoenix's Chief Business Officer, has been an executive at the company since its formation. (Ex. F ¶ 1.) As Chief Business Officer, Ms. Wilson has comprehensive knowledge of Phoenix's day-to-day operations. (*Id.* ¶ 3.) But Defendant Francis has not even considered deposing her. (*Id.* ¶ 5; Ex. E ¶ 3, Ex. E-1.) His counsel did not engage, at all, with the suggestion that she or Mr. Allen could be deposed, instead, to probe those same categories of information. (Ex. E ¶ 3, Ex. E-1.)

7

A protective order preventing a deposition is appropriate where "the discovery sought from [a non-party] is obtainable from other sources that are more convenient, less burdensome, or less expensive"—especially where the non-party "has no special or unique knowledge." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 511 (N.D. Ind. 2007); *see also Garner v. Kinnear Mfg. Co.,* 37 F.3d 263, 270 (7th Cir.1994) (precluding plaintiff from deposing a witness whose knowledge was limited to corporate documents when plaintiff failed to depose the two employees who had personal knowledge of relevant matters). That exactly the case here. Precluding Defendant Francis from taking Mr. and Mrs. Ferrari's oral depositions will not prejudice his case. As in *In re McCorhill Pub., Inc.*, Francis would be "free to obtain the information which [he] seeks from the officers and employees of [Phoenix] who have been actively involved in [Phoenix's] business." 91 B.R. at 225. He simply has chosen not to seek information from those more obvious sources— preferring instead to depose his competitor's elderly parents at a time and place convenient for him. The subpoena should be quashed; a protective order should be issued; and Mr. and Mrs. Ferrari should not be required to sit for depositions.

## CONCLUSION

For the foregoing reasons, Daniel Ferrari and Charlene Ferrari request that the Court grant their Motion to Quash Subpoenas and for Protective Order and preclude Defendant from seeking or taking their pre-deposition testimony.

Dated: March 24, 2025

/s/ Ross M. Good
*Ross M. Good*
THE GOOD LAW GROUP
800 E Northwest Hwy
Suite 814
Palatine, IL 60074
847-600-9576
Email: ross@thegoodlawgroup.com

*Attorney for Movants Daniel Ferrari and
Charlene Ferrari*

**PROOF OF SERVICE**

I hereby certify that a true and correct copy of Daniel Ferrari and Charlene Ferrari's Motion
to Quash Subpoenas and for Protective Order was served on the below counsel on March 24, 2025
via the Court's electronic filing system.

Charlene Cantrell Koonce
Paulette Miniter
Cort Thomas
Andrew Debter
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
214-327-5000
214-327-5001 (fax)
Email: charlene@brownfoxlaw.com
Email: paulette@brownfoxlaw.com
Email: cort@brownfoxlaw.com
Email: andrew@brownfoxlaw.com

*Attorneys for William Francis*

Dated: March 24, 2025                /s/ Ross M. Good_____
                                     *Ross M. Good*