# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Daniel Ferrari and Charlene Ferrari,<br><br>    *Petitioners*,<br><br>v.<br><br>William Francis,<br><br>    *Respondent*. | Case No. 1:25-cv-3127<br><br>Judge Linsay C. Jenkins<br><br>Magistrate Judge Heather K. McShain<br><br>Underlying Litigation:<br>*Ferrari v. Francis*, Case No. 3:23-cv-0445-S, in the United States District Court for the Northern District of Texas |

**DECLARATION OF CHARLENE KOONCE IN SUPPORT
OF RESPONDENT WILLIAM FRANCIS'S RESPONSE TO PETITIONERS'
<u>MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER</u>**

    1.    My name is Charlene C. Koonce. I have personal knowledge of the matters set forth in this Declaration, I am of sound mind, and I am otherwise competent to testify to these matters.

    2.    I have been licensed to practice law in Texas since 1991 and am admitted to practice before all state and federal courts in Texas as well as the Fifth and Eleventh Circuit Courts of Appeal. I am a partner with Brown Fox PLLC, and one of the attorneys representing Respondent William Francis in the underlying defamation action pending in the Northern District of Texas (Case No. 3:23-cv-0445-S), as well as in connection with Petitioners' Motion to Quash in this proceeding.

    3.    The underlying lawsuit rests solely on one claim of defamation. In defense, Defendant contends the statements at issue—all of which assert that Plaintiff Adam Ferrari created, controls, and served as the de facto CEO for Phoenix Capital Holdings Group, LLC ("Phoenix"), and is a felon—are true.

4. According to publicly available records, as well as correspondence with Adam Ferrari's counsel, Daniel and Charlene Ferrari, Petitioners and Adam Ferrari's parents, are the formal owners and founders of Phoenix Energy One LLC ("Phoenix") and are the sole members of Lion of Judah Capital, LLC ("LJC"), which is the majority owner of Phoenix. *See* Phoenix's initial [LLC Agreement](), which is attached as **Exhibit A-1**; *see also* Phoenix's [Form 1-K]() recently filed on December 31, 2024 ("We are a wholly owned subsidiary of Phoenix Equity. LJC controls Phoenix Equity and, therefore, indirectly has control over our management. . . . Daniel Ferrari and Charlene Ferrari each own 50% of the voting membership interests in, and are the managers of, LJC.").

5. Phoenix was formed just weeks after Adam Ferrari was terminated from his prior role at Wolfhawk Energy (later Petram Group) following his arrest on fourteen felony counts. A true and correct copy of the arrest affidavit and related plea records is attached as **Exhibit A-2**.

6. Adam Ferrari pleaded guilty to felony theft in connection with a mineral deed scheme that defrauded mineral owners and operators of over $300,000. *See* Ex. A-2.

7. Following Adam's termination, Daniel and Charlene Ferrari formed and purportedly held all control over LJC, the entity that contributed more than $1.1 million in startup capital to Phoenix—making it the sole capital-contributing owner. *See* A-1. A true and correct copy of LJC's Certificate of Formation is attached as **Exhibit A-3**.

8. In [recent SEC filings](), Phoenix has admitted that Adam Ferrari is the *sole* economic interest holder in LJC, meaning Adam Ferrari is the only source of any "economic" value LJC invested in Phoenix and has an indirect ownership interest in Phoenix through LJC and his parents. ("Adam Ferrari, the son of Daniel and Charlene Ferrari, owns 100% of the economic interests in

LJC, but has no voting or managerial interest in LJC and, therefore, is not a beneficial owner of our membership interests by virtue of his economic interest ownership in LJC.").

9. Counsel for Phoenix has confirmed that Charlene and Daniel Ferrari oversee the day-to-day operations of LJC despite Daniel's paralysis and that "Daniel Ferrari is mentally competent." Counsel for Phoenix further stated that "the presumption that someone who is paralyzed would be unable to manage a company is deeply concerning." A true and correct copy of the email from Phoenix's Counsel regarding Charlene and Daniel's managerial role at LJC is attached as **Exhibit A-4**.

10. Although Adam Ferrari claimed under oath that he served only as a "consultant" to Phoenix starting in 2021, a March 25, 2021 insurance application submitted to provide security for a loan from First International Bank & Trust lists him as "President" and "Manager" of Phoenix. A true and correct copy of the Consulting Agreement dated November 1, 2021 is attached as **Exhibit A-5**. A true and correct copy of the insurance application is attached as **Exhibit A-6**.

11. Ferrari also communicated on behalf of Phoenix using a Phoenix email address, directly managed Phoenix's broker-dealer relationship with Dalmore Group, and issued instructions to Dalmore in a manner consistent with executive authority. Ferrari also played a central role in shaping Phoenix's investor onboarding processes, compliance protocols, and marketing content. Examples of these emails are attached as **Exhibit A-7**.

12. Adam Ferrari's signature appears on Phoenix's DocuSign transactions as Phoenix's "Manager." Digital audit logs show that his signature often appeared within seconds of Daniel Ferrari's from the same California IP address, despite Adam Ferrari's prior statement to FIBT that Daniel was a quadriplegic and physically incapable of typing. A true and correct copy of the relevant DocuSign logs is attached as **Exhibit A-8**.

13. Adam Ferrari and various Phoenix Executives, including Linsdey Wilson and Curtis Allen, have produced affidavits denying Adam Ferrari's executive role at Phoenix. A true and correct copy of sworn declarations and affidavits from Lindsey Wilson, Curtis Allen, and Adam Ferrari, which include statements concerning Adam Ferrari's role at Phoenix, are attached as **Exhibit A-9** (Lindsey Wilson), **Exhibit A-10** (Curtis Allen), and **Exhibit A-11** (Adam Ferrari).

14. However, in a private email, Curtis Allen referred to Adam Ferrari as Phoenix's "owner." A true and correct copy of the email from Curtis Allen referring to Adam Ferrari as Phoenix's "owner" is attached as **Exhibit A-12**.

15. And internal communications and testimony from Chris Masone, one of Phoenix's founding executives, contradict the narrative underlying Adam Ferrari's defamation claim and Petitioners' Motion to Quash. Mr. Masone testified that Adam Ferrari was Phoenix's co-founder and in control of it despite his ownership held through LJC, and that Adam Ferrari acted like an executive and owner. A true and correct copy of the Masone deposition transcript is attached as **Exhibit A-13**.

16. The same legal counsel represents Phoenix, Adam Ferrari, Daniel Ferrari, Charlene Ferrari, and LJC. LJC produced no documents in response to a subpoena issued over a year ago.

17. Respondent has served discovery requests on Adam Ferrari in the Underlying Lawsuit, and served document subpoenas on Phoenix, which include over 60 Requests for Production. In response, Ferrari and Phoenix collectively produced fewer than 80 documents, most with improper AEO designations.

18. Despite the subpoena served on LJC, neither Daniel nor Charlene Ferrari have provided any documents other evidence explaining their role in creating, running, and controlling LJC and Phoenix, or oversight of Adam Ferrari's actions. Instead, Respondent's discovery efforts

have been met with obstruction, including in response to the subpoena served on LJC, all by the same lawyers that represent Phoenix, LJC, Adam Ferrari, and Petitioners. LJC has asserted boilerplate objections and refused to produce foundational corporate records, including formation documents, ownership information, and documents evidencing the source of LJC's capital, which in turn was poured into Phoenix. A true and correct copy of LJC's objections to Respondent's subpoena is attached as **Exhibit A-14**.

19. Given the continuing pattern of refusing to produce documents premised on vague objections, and blanket AEO designations, Respondent is unable to obtain the needed information through written discovery. The testimony in the Affidavits filed by other Phoenix officers, Wilson and Allen, which is blatantly contradicted by documentary evidence obtained from other third parties, demonstrate the futility of seeking the information needed from Respondents, from Phoenix executives and highlights the importance of deposing Respondents rather than witnesses proposed by Adam Ferrari.

20. These facts, taken together, show that Adam Ferrari orchestrated Phoenix's operations while using his parents' formal ownership to obscure his role. The structure he selected—placing Daniel and Charlene Ferrari in nominal control—makes their deposition testimony essential. Only they can credibly explain whether Adam acted with or without their knowledge and consent and what role they agreed to serve and why.

21. I declare under penalty of perjury that the foregoing is true and correct.

April 16, 2025.

                                                           */s/ Charlene C. Koonce*
                                                           Charlene C. Koonce