# EXHIBIT A-10

CAUSE NO. DC-22-06350

| | | |
|---|---|---|
| PHOENIX CAPITAL GROUP HOLDINGS, LLC, | § § § § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| WILLIAM FRANCIS and INCLINE ENERGY PARTNERS, L.P., | § § § | |
| *Defendants*. | § | 116TH JUDICIAL DISTRICT |

### AFFIDAVIT OF CURTIS ROGER ALLEN

STATE OF CALIFORNIA  §
§   to-wit:
COUNTY OF ORANGE   §

BEFORE ME, the undersigned authority, on this day personally appeared CURTIS ROGER ALLEN, the Affiant, a person who identity is known to me. After I administered an oath to Affiant, Affiant testified as follows:

1.  "My name is Curtis Roger Allen. I am over 18 years of age, of sound mind, and capable of making this Affidavit. I am the Chief Financial Officer of Phoenix Capital Group Holdings, LLC ('**Phoenix**'). In this position, I have personal knowledge of, among other things, Phoenix's business and legal affairs as they relate to the above-referenced action currently pending in the District Court for Dallas County, Texas. I have personal knowledge of the matters set forth herein, and could and would testify to them if called as a witness at a hearing or trial.

2.  "I am a certified public accountant, have held series 7 and 66 licenses, and have more than a decade of experience in the financial services/investment industry. I have never been arrested or convicted of any crimes.

3. "I joined Phoenix as its Chief Financial Officer in February of 2020 after working as a Financial Advisor with LPL Financial for over 7 years, and after serving as a Senior Auditor for the Defense Contract Audit Agency for 11 years.

4. "In my role as CFO of Phoenix, I am responsible for all accounting and financial functions of the company, its financial capitalization, and a host of operational and managerial responsibilities.

5. "In February of 2020, I became an equity owner of Phoenix, and I currently hold an 8.22% ownership interest in the company.

6. "During my employment with Phoenix, Adam Ferrari ('**Ferrari**') worked as a consultant.

7. "In my role as CFO, I sometimes interface with Mr. Ferrari to draw from his experience and knowledge in the oil and gas industry. Mr. Ferrari, however, is not and has never been the CEO or chief executive of Phoenix. Currently, and at all times during my role with Phoenix, Lindsey Wilson has served as Phoenix's Manager and Chief Operating Officer, and has maintained managerial authority over Phoenix's day-to-day operations. Mr. Ferrari has never been an executive of Phoenix and has never had authority to act on behalf of or bind Phoenix.

8. "In and before January 2021, Phoenix had a relationship with Hess Corporation with respect to Hess' operations and Phoenix's mineral and leasehold interests. Phoenix routinely interfaces with operators and their employees to determine mineral ownership and collaborate on partnerships, joint ventures and drilling projects. On January 7, 2021, I received an email from Stacey McHenry at ExxonMobil, who I know from similar undertakings on properties ExxonMobil is operating, who forwarded a January 7, 2021 email from "Concerned Mineral Owner [mailto:concernedbakkenmineralowner@gmail.com]" to Hess Corporation and one or more (and

**AFFIDAVIT OF CURTIS ROGER ALLEN**  Page 2

potentially hundreds or thousands) of undisclosed recipients, specifically including Ms. McHenry at ExxonMobil, with the following Subject line: "Adam Ferrari - CEO of Phoenix Capital Group Holdings, LLC." The "anonymous" author of the email states that he learned of Phoenix and Hess Corporation's relationship because it was disclosed in connection with Phoenix's bid to purchase mineral interests through energynet.com, an auction website where mineral buyers like Phoenix, Incline Energy Partners, L.P. ('**Incline**'), and William Francis ('**Francis**') compete to buy purchase mineral interests. In Ms. McHenry's email to me, she asked if I had "any idea who is sending this out to oil companies." A true and correct copy of Ms. McHenry's January 7, 2021 email to me, which forwarded an email of the same date from an "anonymous" sender, is attached as **Exhibit 2-A** and incorporated herein by reference for all purposes.

9. "Thereafter, on June 24, 2021, I discovered that Mr. Francis and Incline made false statements about Phoenix to Crystal Taylor, a person whom Phoenix was dealing and negotiating with to buy mineral interests. Ms. Taylor had taken over the negotiations for her aunt, Sheila Krystal, the landowner. More particularly, on June 24, 2021, Mr. Ferrari forwarded to me a June 17, 2021 email from Mr. Francis at Incline to Mr. Ferrari and Ms. Taylor, wherein Mr. Francis told Ms. Taylor, among other things, that Phoenix's "CEO was arrested and convicted for forging a mineral owners [sic] signature in order to defraud her of hundreds of thousands of dollars." A true and correct copy of Mr. Ferrari's June 24, 2021 email to forwarding Mr. Francis' June 17, 2021 email is attached as **Exhibit 2-B** and incorporated herein by reference for all purposes.

10. "One or more of Mr. Francis' statements to Ms. Taylor in Mr. Francis' above-referenced email (Ex. 2-B) are materially false, specifically including Mr. Francis' and Incline's statement that Phoenix's "CEO was arrested and convicted for forging a mineral owners [sic] signature in order to defraud her of hundreds of thousands of dollars." First, Phoenix does not and

has never had a CEO. Second, Mr. Ferrari is not and has never been CEO or a chief executive of Phoenix. Indeed, Mr. Ferrari has never managed Phoenix, served as or held any executive position for Phoenix, or had authority to bind or make decisions on behalf of Phoenix.

11. "After Mr. Francis sent the above-referenced email to Ms. Taylor (Ex. 2-B), Ms. Taylor did not sell the mineral interests to Phoenix despite her acknowledgement in her June 17, 2021 email fact that Phoenix's offer was almost double that of Incline "for the exact same mineral oil holdings." Instead of selling the interests to Phoenix for almost twice the amount, the interests were sold to Incline. A true and correct copy of a June 2, 2021 Mineral and Royalty Deed from Sidney D. Krystal and Phyllis Krystal Trust Two to Incline, which convey the same interests that are the subject of Phoenix's offer referenced in Ms. Taylor's June 17, 2021 email, is attached as **Exhibit 2-C** and incorporated herein by reference for all purposes.

12. Phoenix was planning to buy Ms. Krystal's mineral interests for $214,109.62, and expected to generate $750,000.00 in royalties from the mineral interest.

13. "Thereafter, on or about 28, February 2022, I contacted Etan Butler, Chairman of Dalmore Capital ('**Dalmore**'), Phoenix's broker-dealer, who informed me that Dalmore had received negative information about Mr. Ferrari and Phoenix from an anonymous source. At that time, Phoenix and Dalmore's relationship was available to the public, including Mr. Francis and Incline, in, among potentially other materials, Phoenix's Offering Statement 1-A, dated November 19, 2021.

14. "Thereafter, in May 2022, when Phoenix was about a week from closing a $50,000,000 credit facility with First International Bank & Trust ('**FIBT**'), I was notified by Justin Voll, FIBT's local branch President, that FIBT was not going to finalize the loan. I learned that Mr. Voll had received a "package" of disparaging materials about Mr. Ferrari and Phoenix from

**AFFIDAVIT OF CURTIS ROGER ALLEN** Page 4

an anonymous source. Phoenix's relationship with FIBT was disclosed in the publicly filed mortgage from Phoenix's previous loans with FIBT. Phoenix has not been able to replace the credit facility it lost as a result of the defamatory package that was sent to FIBT. Absent that package, I am confident the credit facility with FIBT would have closed. The credit facility would have given Phoenix over $22 million of additional capital, that Phoenix could have used to capitalize on historically elevated oil and gas prices. The extra capital would have increased revenues and income significantly for Phoenix at a time when funding to the oil and gas industry was historically low and critically needed.

15. After reviewing Mr. Francis' June 17, 2021 email to Ms. Taylor (Ex. 2-B), learning generally about prior litigation between Incline and Mr. Ferrari's company, Ferrari Energy, and based on information and belief, I and Phoenix believe that Mr. Francis and Incline sent disparaging information about Phoenix to Hess Corporation, ExxonMobil and others in January 2021, to Dalmore on or around February 2022, and to FIBT on or around May 2022, for the purpose, which was successful, of defaming Phoenix, competing unfairly with Phoenix, and interfering with Phoenix's actual and prospective contracts and relationships with Hess Corporation, ExxonMobil, Dalmore, FIBT, and others.

AND, FURTHER, AFFIANT SAYETH NOT.

_____
CURTIS ROGER ALLEN

Subscribed, sworn to and acknowledged before me, the undersigned Notary Public, by Curtis Roger Allen, this ____ day of September, 2022.

My commission expires _____.

_____, Notary Public
Notary Registration No. _____

See attached

## Affidavit of Curtis Roger Allen

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Orange

Subscribed and sworn to (or affirmed) before me on this 26 day of September, 2022, by Curtis Roger Allen, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

ALANA ROSE MONROE
Commission # 2330904
Notary Public - California
ORANGE County
My Comm. Expires JUL 25, 2024

(Seal)     Signature _AM_

# EXHIBIT 2-A



**From:** Mchenry, Stacey Ohwen <stacey.mchenry@exxonmobil.com>
**Sent:** Thursday, January 7, 2021 11:50 AM
**To:** Curtis Allen <CA@phxcapitalgroup.com>
**Subject:** FW: Adam Ferrari - CEO of Phoenix Capital Group Holdings, LLC

I opened this thinking it was from you, and was wondering if you have any idea who is sending this out to oil companies?


Thank You,
**Stacey McHenry | Sr. Title Analyst- Central**
**EXXONMOBIL**-Land Administration UOG |HLW-03-S326
 Mail:   22777 Springwoods Village Pkwy- **LOC 116** | Spring, TX 77389
 Direct:  346.335.0400 | Personal Cell 713.498.2532 | **Oildex Log In** [secure.oildexdx.com]

**From:** Concerned Mineral Owner [mailto:concernedbakkenmineralowner@gmail.com]
**Sent:** Thursday, January 7, 2021 11:28 AM
**To:** ask@hess.com; integrity@hess.com
**Subject:** Adam Ferrari - CEO of Phoenix Capital Group Holdings, LLC

**External Email - Think Before You Click**


To Whom It May Concern:

I was extremely disappointed to see, via some backup (Ex1) that Phoenix Capital Group Holdings, LLC ("Phoenix") provided through an auction at EnergyNet [energynet.com], that Hess Corporation was essentially conducting pro bono due diligence for a mineral acquisition Phoenix was pursuing but had not closed on yet. It appears that Phoenix was utilizing Hess' labor and internal proprietary title databases to check ownership on a mineral owner on or before December 2, 2020, and would hold off on closing their acquisition until Hess blessed and signed off on title via an email on Friday December 4, 2020 at 7:05 AM. After obtaining Hess' due diligence on their mineral acquisition, Phoenix would then electronically file their Mineral and Royalty Deed

1

shortly thereafter the same day at 2:56 PM (Ex2). Within 3 business days, on December 9, 2020 this interest would be setup to be auctioned on EnergyNet platform, with final bids due at 2:55 today.

Phoenix did this in a manner in which it appears to exploit the spread of prices that they knew existed between the price they got Ms. Western under agreement for and what buyers on EnergyNet would pay, while seemingly not taking on any pricing or title risk and certainly not informing Ms. Western of their intentions to start the process of having this interest put up for auction prior to even closing on her transaction. One could speculate with the facts at hand, and reviewing their PSA templates, that Phoenix went through this timeline in a manner in which the auction would close and they would have funds from that sales prior to even having tendered Ms. Western the closing price promised in their PSA. I've provided a copy of one of their proposed agreements (Ex3) which provides that Phoenix must take ownership of the asset prior to closing and that they don't have to close until 45 business days after they receive the executed PSA & Mineral Deed. As the mineral deed between Ms. Western and Phoenix was executed and notarized on December 1, 2020, if they negotiated their typical PSA, that would mean that Phoenix wouldn't need to even pay Ms. Western until January 31, 2021.

Hess providing ownership confirmation to its mineral owners in this type of transparent fashion should be applauded within our industry. However, that doesn't appear to be what happened and I think anyone reviewing this email would agree that providing this kind of proprietary data should not extend to mineral brokers who are trying to profit off risk free flipping of mineral owners property. **Further more and most disturbing, is the mineral broker being granted preferential treatment is owned, financed and managed by a convicted criminal named Adam Ferrari (Ex4 & Ex5)**. Mr. Ferrari was arrested in 2019 after he had cut off the signature and notary block of a mineral deed and cut and pasted it onto a backdated mineral deed into his company in order to defraud said mineral owner out of >$250k.

Phoenix obviously doesn't promote the fact that their CEO is in fact Mr. Ferrari for obvious purposes, most importantly being the fact that they're clearly violating SEC laws, which disallows any company to utilize EnergyNet's online marketplace if their owners or management have been convicted of crimes that "*(ii) are based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct, issued within ten years;*", thus assisting them in their scheme to profit off unsuspecting mineral owners. As such, I'll address several points I feel prove beyond a reasonable doubt that Mr. Ferrari is behind Phoenix:

-Mr. Ferrari has a Phoenix email (Ex6) and is actively being listed in association with the company alongside the rest of their employees contact information on 3rd party websites not associated with Phoenix.
-I've never heard of a company that lists and actively promotes who their COO, CTO & CFO are, but omits who the CEO of the company is.
-First hand accounts from Phoenix's counterparties have specifically stated that their point of contact in working with Phoenix was Mr. Ferrari.
-Phoenix was incorporated in Delaware on 4/16/2019 (Ex7) two months after Ferrari was arrested and almost immediately after he was kicked out of his company by his board of directors shortly thereafter.
-Mr. Ferrari lists his address with the Colorado Secretary of State (Ex8) as being in Playa Vista, CA, which is adjacent to Phoenix offices in a city in which I don't think anyone can name another active mineral and royalty acquisition company.
-Phoenix's "founding member" (Ex9) alongside Mr. Ferrari, as well as Tom Kruk (Ex10), Sean Goodnight (Ex11) and Adam Josephson (Ex12) all worked for Mr. Ferrari prior to being let go alongside Mr. Ferrari in the purge that occurred after his arrest, and are all now gainfully employed at Phoenix under Mr. Ferrari's direction.

I mention all of this, as I don't believe it's widely known in the Bakken/Williston Basin community as to Mr. Ferrari's association with Phoenix or their wider employee base's lack luster track record in conducting themselves in an ethical manner. Also, I feel compelled to bring this particular incident to light so that Phoenix is not being assisted in promulgating the same business tactics that Mr. Ferrari utilized in order to exploit the

mineral ownership community in Weld County Colorado starting in 2017 up until his arrest in 2019 while running Ferrari Energy/Wolfhawk Energy Holdings LLC.

In particular, Phoenix's predecessor entity's standard business practice in Weld County was to get someone under agreement in a manner in which the owner signed a PSA & Mineral Deed at the same time prior to closing. They would then file the mineral deed but hold off on paying or closing on that mineral owner until they had been able to sell the interest or the mineral owner started to complain. This ultimately led to Phoenix's predecessor entity getting sued 9 times within the span of just 9 months to a point that someone would set up a [website to document all of these misdeeds [lawsuitsoilandgas.com]](website to document all of these misdeeds [lawsuitsoilandgas.com]). Phoenix's predecessor would ultimately not win a single one of these lawsuits. In fact, over the span of just two years between September 2017 and 2019, Phoenix's predecessor would have to file 59 reconveyances (Ex13) to the counterparties they never paid, but had already filed a mineral deed of record in Weld County, with their misconduct and behavior being well documented in the local press (Ex14).

<u>Clearly I don't believe anyone at Hess or the organization in general has done anything wrong here, but were merely attempting to expedite your operations.</u> So, at the very least, I would encourage you and the rest of the operator community in the Bakken to stop providing Phoenix/Ferrari with proprietary information without having first obtained a filed copy of a mineral deed. Further, and I believe more importantly, I would also highly recommend that additional oversight be placed into whether or not Phoenix has actually tendered full payment to their mineral owners they're transacting with prior to formalizing any transfers they might be requesting and certainly before releasing any funds.

Thank you for your time,


Concerned Mineral Owner

# EXHIBIT 2-B



**From:** Adam Ferrari <AF@phxcapitalgroup.com>
**Date:** Thursday, June 24, 2021 at 9:18 AM
**To:** Curtis Allen <CA@phxcapitalgroup.com>, Lindsey Wilson <LW@phxcapitalgroup.com>
**Subject:** Fw: Krystal family oil holdings

**From:** William Francis <william@inclinelp.com>
**Sent:** Thursday, June 17, 2021 2:59 PM
**To:** Crystal Taylor <cat44771@yahoo.com>; Adam Ferrari <AF@phxcapitalgroup.com>
**Subject:** Re: Krystal family oil holdings

You citing Phoenix/Ferrari as the other offer/group that is telling you that we low balled you is all the information I need to know. We made your aunt aware of those permits when she had called us and not the other way around.

I would love nothing more than to defend my company's track record versus the misdeeds that Phoenix/Ferrari has peformed over the years. Namely, the fact that their CEO was arrested and convicted for forging a mineral owners signature in order to defraud her of hundreds of thousands of dollars.

https://www.denverpost.com/2019/02/19/denver-ceo-ferrari-oil-gas-weld-fraud-charges/ [denverpost.com]
https://www.greeleytribune.com/2019/08/08/adam-ferrari-pleads-guilty-to-felony-theft-in-denver-district-court-receives-deferred-sentence/ [greeleytribune.com]

Here's another link that details Sean Goodnight track record, who you're working with:
https://www.greeleytribune.com/2019/02/24/weld-district-court-records-provide-insights-into-adam-ferraris-business-practices/ [greeleytribune.com]

Regards,


**William Francis**
Managing Partner
Incline Energy Partners, LP
(214) 274-3800
https://inclinelp.com/ [inclinelp.com]


On Thu, Jun 17, 2021 at 3:59 PM Crystal Taylor <cat44771@yahoo.com> wrote:

> Hi again William,
>
> I have spent every spare minute these past days researching, calling, and investigating these mineral oil interests and the oil market in general.
>
> Your claim that Incline has acquired 3 times more business in the Williston Basin area than any other company in the past 3 years doesn't automatically equate to your company never giving low ball offers as you proposed in this last email. That could mean any number of things....you could be marketing more aggressively than your competitors, you could be buying up undervalued mineral deeds from lots of owners who have no idea what they're doing in the selling marketplace like the case with my aunt, etc. That's great that your business is growing so rapidly but your argument here about never giving low ball offers doesn't hold weight. I don't think negatively of you as a person, I'm just doing what is fair and right in this case based on personal as well as professional opinions and appraisals.
>
> In reference to the professional opinions we've received since my brother and I stepped in, they are all from reputable and highly experienced mineral oil brokers who know the market well. The first opinion/appraisal was from Brian Wolf Oil and Gas Properties, who has been in business since 1992 and has brokered over $1 billion in mineral oil transactions. The other professional opinions/appraisals have been from US Mineral Exchange, who have been in business for a decade, Vintage Oil and Gas, and Community Minerals, which has over 50 years in this business.
>
> They have all agreed that this was a low ball offer and I'll explain why. As I'm sure you are aware, 10-12 new drilling permits have been issued on and around the land in this particular contract with Incline (4.8 net mineral acres in 147N-96W sections 23 & 26). That greatly increases the value of these oil interests and these permits were issued before May 19th.
>
> We do very much appreciate your offer to make things right by honoring any other official offers during that time period. Sheila has been searching through her emails for other offers on this exact piece of land and she's getting confused again by all the numbers and details of dozens of mineral oil properties we own in several different states. She thinks she began putting our various properties up for sale in March or April of this year so there would be nothing before that time. But I do have an official offer in my inbox that she emailed to me back in May for the same exact property. They have the 4.8 net mineral acres divided up into sections 23 and 26, with an offer of $27,615.56 for 23 and $55,231.14 for 26. So the total offer for the same 4.8 net mineral acres was $82,846.70. They also wanted to buy other holdings we have in Dunn County, which is included in their offer but it's all separated out into distinct holdings and offers as you will see in the documents. She was in contact with them before May 19th but did not receive the official documentation until May 24th and then they sent finalized documents on May 31st and June 1st. My research and conversations with professionals in this field show that the price of oil fluctuated very little between May 19th and June 1st and absolutely does not account for the difference in offers....Incline at $45,000 and Phoenix at $82,846.70 for the same exact mineral oil holdings.
>
> I will forward you Phoenix's official offer in a separate email.
>
> Thank you for your consideration,
> Crystal

2

# EXHIBIT 2-C

3093961
MINERAL DEED $20.00 Page: 1 of 2
Lisa A. Guenther, Dunn County Recorder 6/2/2021 3:01 PM
By _____
Recorded Electronically

# MINERAL AND ROYALTY DEED

KNOW ALL MEN BY THESE PRESENTS:

That **Sidney D. Krystal and Phyllis Krystal Trust Two, created under the Sidney D. Krystal and Phyllis Krystal Living Trust, dated June 17, 1977, as amended in total on December 28, 1981, and further amended on November 10, 1989**, whose address is 1509 Euclid Ave., Berkeley, CA 94708, hereinafter called "GRANTOR", for good and valuable considerations, the receipt of which are hereby acknowledged, does hereby grant, bargain, sell, convey, transfer, assign, and deliver unto **Incline Bakken Minerals, LLC**, whose address is 5011 N. Central Expressway, Dallas, TX 75205, hereinafter called "GRANTEE", all of Grantor's right title and interest in and to all of the oil, gas and other minerals in, to and under and that may be produced from the following described lands in Dunn County, North Dakota, to-wit:

> **Township 147 North, Range 96 West, 5th P.M.**
> **Section 23: W2**
> **Section 26: ALL**

This deed is subject to "**No Surface Occupancy**" and it is agreed and understood that Grantee, its successors or assigns shall not be allowed access to the surface, nor shall Grantee conduct any operations or locate any facilities on the surface of the subject lands. Grantee shall be entitled to all other mineral rights associated with oil and gas development, including the ability to participate in and receive royalty payments from the drilling of directional or horizontal wellbores.

This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease heretofore executed and now of legal record; it being understood and agreed that said Grantee shall have, receive and enjoy the herein granted undivided interests in and to all bonuses, rents, royalties and other benefits which may accrue thereunder from and after the effective date hereof, precisely as if the Grantee herein had been at the effective date of making said lease and/or leases the owner of a similar undivided interest in and to the lands above described and none other and Grantee one of the Lessors therein. This includes any and all monetary values held in suspense by oil and gas operator(s) of the effective date stated herein. The effective date referenced below is to be interpreted as effective on a cash accounting basis.

Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted and likewise agrees that Grantee herein shall have the right at any time to redeem for said Grantor by payment any mortgage, taxes, or liens on the above described land upon default in payment by Grantor, and be subrogated to the rights of the holder thereof.

TO HAVE AND TO HOLD The properties described above with all and singular the rights, privileges and appurtenances thereunder or anywise belonging to said Grantee herein their heirs, successors, and assigns forever, and Grantor does hereby bind himself, his heirs, executors, administrators, successors and assigns to warrant and forever defend all and singular the said property unto the said Grantee herein, their heirs, successors and assigns against every person whomsoever claiming or to claim the same or any part thereof.

**This instrument is agreed to be effective for all purposes April 1st, 2021**

MINERAL DEED $20.00 Page: 2 of 2
3093961
Lisa A. Guenther, Dunn County Recorder 6/2/2021 3:01 PM
By _____
**Recorded Electronically**

**SIDNEY D. KRYSTAL AND PHYLLIS KRYSTAL TRUST TWO, CREATED UNDER THE SIDNEY D. KRYSTAL AND PHYLLIS KRYSTAL LIVING TRUST, DATED JUNE 17, 1977, AS AMENDED IN TOTAL ON DECEMBER 28, 1981, AND FURTHER AMENDED ON NOVEMBER 10, 1989**

_____Sheila Krystal_____
By: Sheila Krystal – Successor Trustee

ACKNOWLEDGMENT

STATE OF CALIFORNIA
COUNTY OF ALAMEDA

BEFORE ME, the undersigned, a Notary Public, personally appeared **Sheila Krystal as Successor Trustee for Sidney D. Krystal and Phyllis Krystal Trust Two, created under the Sidney D. Krystal and Phyllis Krystal Living Trust, dated June 17, 1977, as amended in total on December 28, 1981, and further amended on November 10, 1989**, on the _16_ day of _MAY_, 2021 to me known to be the identical person(s), described and who executed the foregoing instrument.

IN WITNESS WHEREOF, I have set my hand and affixed my notarial seal the day and year last above written.

My Commission Expires: MAY 5, 2024

_____Kenneth Smith_____
Notary Public, State of CALIFORNIA

KENNETH SMITH
COMM # 2327442
San Joaquin County
California Notary Public
Comm Exp May 5, 2024