IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Daniel Ferrari and Charlene Ferrari, ) | |
| ) | Case No.: 1:25-cv-03127 |
| *Petitioners*, ) | |
| ) | Underlying Litigation: |
| v. ) | *Ferrari v. Francis*, Case No. 3:23-cv- |
| ) | 00455-S, in the United States District |
| William Francis, ) | Court for the Northern District of Texas |
| ) | |
| *Respondent*. ) | |
| ) | |
| ) | |

**DANIEL FERRARI AND CHARLENE FERRARI'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER**

Petitioners Daniel Ferrari and Charlene Ferrari respectfully submit this Reply in Support of their Motion to Quash Subpoenas and for Protective Order [Dkt. 1] ("Motion" or "Mot."). For the reasons set forth in their Memorandum of Law in Support of Motion to Quash Subpoenas and for Protective Order [Dkt. 3] ("Memorandum" or "Memo.") and below, the Court should grant Petitioners' Motion.

**INTRODUCTION**

Francis's Response to [Petitioners'] Memorandum of Law in Support of Motion to Quash Subpoenas and for Protective Order [Dkt. 14] ("Opposition" or "Opp.") does not address, in any meaningful way, why he must depose Daniel Ferrari, a quadriplegic, and Charlene Ferrari, Daniel's primary caretaker. ***First***, Francis misstates the standard for requiring a *non-party witness* appear for a deposition, citing instead (and almost exclusively) cases involving motions for protective orders filed by *parties*. As a result, his entire analysis is based on the wrong legal standard. ***Second,*** Francis also misstates and dismisses the impact that requiring Mr. and Mrs. Ferrari to sit for depositions would have, suggesting it would subject them to mere "discomfort"

1

or "inconvenience" that can be "accomodat[ed]." But Mrs. Ferrari's declaration defies this, clearly stating the acute stress and severe health risks that sitting for two depositions would inherently pose for Mr. Ferrari. **Third**, Francis does not identify any unique, let alone superior, information Daniel or Charlene Ferrari possess. In fact, Francis's own motion identifies several people and entities who have superior knowledge, but he dismisses those people as liars and therefore argues that he need not depose them. That is not the law. **Fourth**, and dispositively, Francis does not explain why he did not seek or compel documents or information from those individuals or entities before demanding Daniel and Charlene Ferrari, individually, sit for hours in back-to-back depositions. For each of these reasons, Mr. and Mrs. Ferrari's Motion should be granted.

## ARGUMENT

I. **Under the Correct Standard, Mr. and Mrs. Ferrari More Than Show A Deposition Would Be Dangerous to Mr. Ferrari's Health, and Those Risks Cannot Be Accommodated.**

Francis is wrong that Mr. and Mrs. Ferrari face a "quite heavy burden" to preclude their depositions. (Opp. p. 7 (citing *Stanek v. St. Charles Cmty. Unit Sch. Dist. 303*, No. 13 C 3106, 2020 WL 1304828, at *3 (N.D. Ill. Mar. 19, 2020) (stating standard under which "a ***party*** seeking to bar an oral deposition based on health-related concerns" must document the danger to his or her health).) That may be so for parties, but it is not the case for non-party witnesses. Francis's own cases make this clear. *Campos v. Webb Cnty.*, cited repeatedly in Francis's Opposition, recognized the "clear distinction" between the standard for quashing a non-party versus a party deposition, and that a "higher burden [is] imposed on a party who is seeking a protective order, ***as opposed to a witness*** seeking one." 288 F.R.D. 134, 137-38 (S.D. Tex. 2012). Francis wholly fails to engage with the correct standard for precluding a witness deposition, citing exclusively to cases involving

***party*** motions for protective orders to establish the legal standard for his Opposition.[1] (*See* Opp. at 6-7 (citing *Stanek*, 2020 WL 1304828; *Campos*, 288 F.R.D. 134 (granting in part motion for protective order and staying deposition of plaintiff given mental health concerns); and *Schoor v. Briarwood Estates Ltd. P'ship*, 178 F.R.D. 488, 491 (N.D. Ohio 1998) (granting in part plaintiff's motion for a protective order not to be required to submit to an oral deposition noticed by defendants).) Thus, the Opposition does not refute the "[m]anifest[]" starting point for witness depositions: ***"[I]f an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order.***" *In re McCorhill Pub., Inc.*, 91 B.R. 223, 225 (S.D.N.Y. 1988) (emphasis added).

Petitioners more than substantiate the serious risks to Mr. Ferrari's health presented by appearing for back-to-back depositions, regardless of any "accommodations" Francis represents he might offer. (Memo. Ex. D ¶¶ 9-16.) Those risks are directly in line with health concerns that compelled Courts to quash subpoenas and issue protective orders (*see* Memo. at 5-6 (compiling cases))—they are not mere "inconvenience[s]," as Francis puts them (Opp. at 15). And, as Mr. Ferrari's primary caretaker, Mrs. Ferrari is uniquely qualified to provide the "specific … facts" about her and Mr. Ferrari's "need for a protective order and the harm which will be suffered without one." *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993).

---

[1] The few cases Francis cites that do involve non-party depositions are readily distinguishable. *Reed v. Illinois*, 318 F.R.D. 77 (N.D. Ill. 2016) addressed a motion to quash a subpoena of a non-party witness on the basis that "[deponent] doesn't have any of the requested documents, and knows nothing about the case," and that the subpoena subjected her to mere "stress and worry." *Id.* at 79. This is not a "stress and worry" case. *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166 (N.D. Ill. June 25, 2020) did not involve a motion to quash or for protective order, at all. *Id.* at *3. That case involved a Rule 30(b)(4) motion for remote depositions, and that motion rested on general health and logistic concerns presented by the COVID-19 pandemic, not particular health concerns experienced by any single deponent. *Id.*

Francis also overlooks that the inherent stress of sitting in a deposition would be incredibly dangerous to Daniel Ferrari (*See* Memo*.* Ex. D ¶ 18)—a consideration courts have specifically acknowledged when granting protective orders to prevent witness depositions. *E.g.*, *Frideres,* 150 F.R.D. at 155–57; *In re McCorhill Pub., Inc.*, 91 B.R. at 224–25 (observing the inherent health risks presented by the "agitation caused by the examination and cross-examination contemplated by the oral deposition"). And Francis fails to explain how any proposed "accommodation" could possibly alleviate that risk (none could). Mr. and Mrs. Ferrari should not be subjected to back-to-back depositions, and certainly not on Francis's terms. *See In re McCorhill Pub., Inc.*, 91 B.R. at 225 ("This court is not prepared to assume the responsibility of subjecting [movant] to a life-threatening deposition simply on the statement of [the subpoenaing party's] attorney that he has no intention of pressuring [movant.]").

**II.     Francis Fails to Identify Unique Information Mr. and Mrs. Ferrari Possess, and He Fails to Explain Why He Did Not Seek Information Through Alternative, Available Means.**

The enormous and hazardous burden that deposing the Mr. and Mrs. Ferrari would impose far outweighs Francis's need for any evidence from them—especially given Francis's failure to attempt to subpoena other witnesses with equal or greater knowledge. Francis fails to identify any unique knowledge Mr. and Mrs. Ferrari may have regarding Adam Ferrari's (alleged) role at Lion of Judah Capital, LLC ("LOJC") or Phoenix Energy One LLC ("Phoenix"). In laying out his defense theory in the underlying case for this Court, Francis in fact confirms numerous other people would have *superior* knowledge about Adam Ferrari's role at Phoenix: namely, Adam, himself; a corporate representative from Phoenix; and Phoenix's other executives. Francis's best explanation for not attempting to depose Phoenix's executives before subpoenaing Mr. and Mrs. Ferrari (Adam's parents) is that Lindsey Wilson and Curtis Allen have given prior testimony that conflicts with his theory of the case—in response to which he questions their truthfulness. (Opp.

4

at 10.) But that skips a necessary step: Witnesses with superior knowledge must be deposed first and cannot simply be brushed aside. Francis cannot force Mr. and Mrs. Ferrari to sit for depositions *before* exploring Ms. Wilson and Mr. Curtis's superior knowledge and experience first; his preconceived notions regarding the testimony Ms. Wilson or Mr. Curtis might offer does not change this. *See Garner v. Kinnear Mfg. Co.,* 37 F.3d 263, 270 (7th Cir.1994) (precluding plaintiff from deposing a witness whose knowledge was limited to corporate documents when plaintiff failed to depose the two employees who had personal knowledge of relevant matters).

Francis's Opposition further reveals he is seeking information better suited for a 30(b)(6) deposition of LOJC—namely, information about its capital, management, and organization. (Opp. at 1.) He has, in fact, scheduled such a deposition already, and LOJC has readily agreed to it.[2] But that is not the deposition he seeks to enforce in his Opposition. Instead, Francis seeks to require Mr. and Mrs. Ferrari, personally, to appear for a deposition.

Francis attempts to justify his decision not to depose first a corporate representative of LOJC by asserting the company was uncooperative during document discovery. (Opp. at 13-15.) These arguments would be more appropriate for a motion to compel—but Francis never filed one. Therefore, again, he has missed a necessary step. And they might be more pertinent if LOJC was similarly unforthcoming (as Francis describes it) during a deposition. But, once again, he turned to Mr. and Mrs. Ferrari, personally, before he ever attempted to depose LOJC.

Defendant cannot assert in good faith that he sought discovery from other sources, or that he was justified in his decision not to do so, before issuing a burdensome deposition subpoena to

---

[2] Discovery in the underlying proceeding closed on April 7, 2025. *See Ferrari v. Francis*, No. 3:23-cv-00455, ECF 71, Am. Sched. Order (N.D. Tex. May 1, 2024). As the discovery deadline approached, the parties agreed to extend the discovery deadline only as to certain depositions, including the deposition of LOJC, which has not yet been scheduled.

5

Adam Ferrari's parents. *Halperin v. Kissinger*, 606 F.2d 1192, (D.C. Cir. 1979), *aff'd per curiam*, 452 U.S. 713 (1981). Francis's own motion makes clear that there were "other sources that are more convenient, less burdensome, or less expensive," and that Mr. and Mrs. Ferrari "have no special or unique knowledge." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 511 (N.D. Ind. 2007). He simply chose not to seek information from those more obvious sources, and his Opposition confirms this. Petitioners should not be subjected to harmful, potentially life-threatening, depositions as a consequence of Defendant's discovery choices. Their Motion should be granted.

Dated: April 30, 2025
      /s/Ross M. Good
*Ross M. Good*
THE GOOD LAW GROUP
800 E Northwest Hwy,
Suite 814
Palatine, IL 60074
847-600-9576
Email: ross@thegoodlawgroup.com

*Attorney for Petitioners Daniel Ferrari and Charlene Ferrari*

## PROOF OF SERVICE

I hereby certify that a true and correct copy of Daniel Ferrari and Charlene Ferrari's Motion to Quash Subpoenas and for Protective Order was served on the below counsel on April 30, 2025 via the Court's electronic filing system.

    Charlene Cantrell Koonce
    Paulette Miniter
    Cort Thomas
    Andrew Debter
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    214-327-5000
    214-327-5001 (fax)
    Email: charlene@brownfoxlaw.com
    Email: paulette@brownfoxlaw.com
    Email: cort@brownfoxlaw.com
    Email: andrew@brownfoxlaw.com

    *Attorneys for William Francis*

Dated: April 30, 2025

                                            /s/ Ross M. Good_____
                                            *Ross M. Good*